Don-ahue, J.
Since the commencement of these actions, Sections 4000-16 to 4000-28, inclusive, General Code (106 O. L., 286), have been held constitutional by this court, in the case of State, ex rel. Campbell, Pros. Atty., v. Cincinnati Street Ry. Co. et al., 97 Ohio St., 283, decided March 5, 1918. Further discussion of this question is therefore unnecessary.
It is contended, however, that the initiated ordinance providing for the appointment of a Rapid Transit Commission, with the powers and duties prescribed in Sections 4000-16 to 4000-28, inclusive, General Code, is void, for the reason that these sections are in conflict with the charter of the city of Cleveland.
*87 It is pernaps true that the charter of the city of Cleveland might have been written so as to deprive that city of the right to exercise statutory powers that may be exercised by other cities having a different charter or no charter at all. Certainly, however, this charter has not been so written.
Section 1, among other powers enumerated, expressly reserves to the city of Cleveland “all powers that now are, or hereafter may be granted to municipalities by the constitution or laws of Ohio.” Section 2 is equally explicit in declaring that “The enumeration of particular powers by this charter shall not be held or deemed to be exclusive.” Every provision found in any subsequent section of this charter must be read in connection with, and, if possible, construed in harmony with, these provisions found in Sections 1 and 2. In other words, these declarations at the very threshold of the charter provisions clearly indicate that it was not the intention of the people of the city of Cleveland when they adopted this charter to deprive that city of any power conferred upon municipalities by the statutes of this state, -or that might under the constitution and laws of the state of Ohio have been written into the charter itself.
Where, by the express terms and provisions of a written charter, a municipality reserves to itself the right to exercise a power conferred by statute, which statute provides specific and exclusive methods of procedure for the exercise of such power, it follows that the electors of the municipality voting for such charter must necessarily have understood and intended that the municipality *88 should exercise such power in accordance with the terms and conditions of the statute conferring the same; otherwise such reservation in the charter of the right to exercise powers conferred upon municipalities by the laws of this state would be a vain and useless thing.
If it were conceded, however, that the provision in this charter, reserving to the city of Cleveland, in addition to the powers expressly enumerated therein, all powers now or hereafter granted to municipalities by the laws of Ohio, did not include as incident thereto the right to exercise these powers in the manner and method provided by the statute conferring the same, nevertheless it is further provided in Section 1 of the charter that such powers “shall be exercised and enforced in the manner prescribed by this charter, or when not prescribed herein, in such manner as shall be provided by ordinance or resolution of the council.”
The initiated ordinance provides not only that the city of Cleveland shall avail itself of the powers conferred by these statutes, but further provides how_these powers shall be exercised.
Some objection is made to this ordinance upon the ground that it does not recite in detail the method of exercising this power, as fully as it is written into the statute itself. It is true that the constitution of this state provides that the general assembly shall not amend or revive a law unless the new act contains the entire act revived or the section or sections amended. If it were conceded that this constitutional provision applies to city .or *89 dinances, there is no attempt here to revive or amend any other ordinance.
On the contrary, the purpose of this ordinance is to authorize the city of Cleveland to avail itself of the authority conferred by these statutes upon the municipalities of this state, and, whether necessary or not, it does further provide that that power shall be exercised in accordance with the provisions of the statutes granting this power, which is the only manner in which it can be exercised in order that the city may have the full benefit of the power conferred thereby.
So far as the city of Cleveland, or any other city of the state, is concerned, this statute is fixed, definite and certain, and it would be idle for a city seeking to avail itself of the power therein granted to rewrite into an ordinance the specific terms of the statute itself. This ordinance, therefore, does provide according to express terms of the charter the manner of exercising this power. .
It is insisted, however, that Section 77 of this charter includes within its terms the construction of a rapid transit system, and confers upon the City Plan Commission full authority to construct, control, and operate the same, and that, in harmony with the provisions of this section of the charter, ordinance No. 32476 was passed by council on the 11th day of May, .1914, which ordinance provides for a City Plan Commission of seven members, to be appointed by the mayor, and further provides the manner in which this commission shall exercise its power and control over the mat *90 ters and things mentioned in Section, 77 of the charter.
Even if Section 77 of the charter specifically provided for the construction of a rapid transit system, it must nevertheless be read and construed in connection with Section 1, reserving to the city all powers granted by the laws of Ohio, and Section 2, which provides that the charter enumeration of powers shall not be exclusive; so that in such event either the charter or statutory method would be open to the city.
It is by no means clear, however, that Section 77 of the charter contemplates the construction of a rapid transit system. It provides that “There shall be a city plan commission to be appointed by the mayor with power to control, in the manner provided by ordinance, the design and location of works of art which are, or may become, the property of the city; the plan, design and location of public buildings, harbors, bridges, viaducts, street fixtures and other structures and appurtenances; the removal, relocation and alteration of any such works belonging to the city; the location, extension and platting of streets, parks and other public places, and of new areas; and the preparation of plans for the future physical development and improvement of the city.”
It is unnecessary to consider the ordinance passed under authority of this section, for it must be confined to the things enumerated in the charter itself. If such ordinance were in conflict in any particular with the initiated ordinance; the initiated ordinance, having been passed later, would repeal by implica *91 tion all the provisions of the earlier ordinance in direct conflict therewith. Therefore, the charter is all that is necessary to consider in determining whether it, in terms, precludes the city from availing itself of the power and benefits conferred by Sections 4000-16 to 4000-28, inclusive, General Code.
It is true that aside from the provisions of the charter, the city of Cleveland has authority to construct a rapid transit system under the provisions of Section 4, Article XVIII of the Constitution of Ohio, as amended September 3, 1912. No statute can deprive it of that power, but it is by no means clear that such power could be exercised under the provisions of Section 77 of the charter.
The clear intent and purpose of this charter is to provide a general plan for the government of the city of Cleveland. The construction of a rapid transit system is not an everyday affair. It is not within the usual and ordinary routine of municipal government. A matter of this importance, involving the expenditure of millions of dollars, would necessarily demand the entire time and attention of every member of the commission having it in charge. Such added duties and burdens would undoubtedly embarrass, hinder, and delay a commission appointed as a permanent institution of government and charged with the administration of the usual and ordinary governmental functions. It is hardly within the range of probabilities that it was the intent and purpose of the people of Cleveland, when they adopted this charter, to overburden a permanent governmental commission with such *92 unusual and extraordinary duties. To so hold would be a strained construction of this section that would deny to the city of Cleveland the right to exercise the powers conferred by these statutes upon the municipalities of the state. Such construction would be wholly in disregard of and in conflict with the provisions of Sections 1 and 2 of the charter.
The prophetic wisdom of these provisions of the charter clearly appears by the conceded facts in this case.
• The act of May 17, 1915 (106 O. L., 286), now Sections 4000-16 to 4000-28, inclusive, General Code, confers upon the municipalities of the state not only the authority to construct a rapid transit system, but also authority to levy a tax to pay the interest upon bonds issued for such purpose and to provide a sinking fund for their redemption at maturity, in excess of the limitations provided by law for maximum taxing rates on property in municipal corporations, except the combined maximum rate fixed in Section 5649-5b, General Code, and one-half mill in addition thereto.
It was admitted by counsel in open court in the argument of this case that if the city of Cleveland were proceeding to construct a rapid transit system under the provisions of its charter, it,could not, under the limitations imposed by law, levy a tax sufficient for such purpose. It must also be admitted, that the city cannot, by amendment to its charter, exempt such levy of taxes from the limitations imposed by statute; for it is expressly provided in Section 13, Article XVIII of the Con *93 stitution, as amended September 3, 1912, that “Laws may be passed to limit the power of municipalities to levy taxes and incur debts for local purposes.”
It follows, therefore, that, if the city of Cleveland cannot avail itself of the powers conferred by law upon the municipalities of the state to levy a tax for this purpose in excess of the maximum tax rates that may be levied in any taxing district, it is powerless to meet the urgent and imperative need of its people, regardless of the fact that a large majority of the electors of that city have emphasized by their vote in favor of the adoption of this ordinance the public demand for rapid transit facilities, and regardless of the further fact that all other cities of the state that have no charter, or that have not in their charter deprived themselves of this privilege, may exercise this power.
This contention overlooks the fact that the amendment to the Constitution of Ohio conferring upon cities and villages authority to exercise all powers of local self-government was not intended to abridge, but rather to enlarge the powers of municipalities.
It is clear, however, that the exercise of this power to levy an additional tax can in no wise conflict with the provision of the charter that cannot and does not purport to confer any such power. On the contrary, if the provision in the first section of this charter, that the city shall have and exercise in addition to the powers enumerated therein “all powers that now are, or hereafter may be granted to municipalities by the constitution or laws of *94 Ohio,” means anything at all, it certainly means that the city of Cleveland can exercise this power conferred by law upon municipalities, to levy a tax for this purpose in excess of the maximum rate fixed by other statutes. To do this, it must follow the terms of the statute. It cannot have the benefits without accepting the burdens and conditions imposed.
The people of Cleveland, who adopted this charter for the government of their city, have, by the adoption of this ordinance, interpreted its terms. While an interpretation clearly at variance with its express provisions could not be permitted, yet the interpretation of a written instrument by those responsible for the existence of that instrument, and who undoubtedly are best informed as to the intent-and purpose thereof, is entitled to some consideration and respect, for if the intent, purpose and understanding of the electors of a municipality that have adopted a city charter are. to be wholly disregarded by the courts a city might be entirely deprived of its constitutional right to home rule. It is true, however, that where the language of a charter is plain, clear, and unambiguous, it must be given its usual and ordinary meaning, and if such construction is not in accord with the intent and purpose of the electors the remedy is by amendment of the charter.
A majority of this court are of the opinion, however, that the provisions of this charter fairly and fully state the purpose and intent of the charter commission and the people of the city of Cleveland; that the electors of that city fairly interpreted its
*95 terms when they adopted this ordinance; and that there is nothing in this charter that deprives or was intended to deprive the city of Cleveland of the right to exercise any power conferred by statute upon the municipalities of this state, or that compels the city of Cleveland to drop out of the march of progress and give place to lesser municipalities that under favor of this statute may levy a tax necessary to meet the needs of increasing population.
For these reasons, in case No. 15853 the writ is refused and petition dismissed, and the judgment of the court of appeals in Case No. 15854 is affirmed.

Writ refused.

Judgment affirmed.

Nichols, C. J., Newman, Jones, Matthias and Johnson, JJ., concur.